IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS PIZARRO-QUIÑONES,<br><br>Defendant. | CRIM. NO.: 23-001 (SCC) |

**OPINION AND ORDER**

Defendant Luis Pizarro-Quiñones ("Mr. Pizarro") stands charged with one count of possession of a machine gun in violation of 18 U.S.C. § 922(o). *See* Docket No. 10. Mr. Pizarro moves to suppress evidence, specifically a firearm and ammunition, as fruits of an allegedly unconstitutional search and seizure.[1] *See* Docket No. 45, pg. 1. The Government opposes on grounds that the search and seizure never fell afoul of the Fourth Amendment. *See* Docket No. 48, pg. 4. The Court held an evidentiary hearing regarding Mr. Pizarro's

---

[1] Mr. Pizarro also moved to suppress all information extracted from his cellphones. *See* Docket No. 45, pg. 1. However, during the evidentiary hearing regarding the Motion to Suppress, the Government represented that it would not seek to introduce that evidence at trial, therefore mooting that aspect of Mr. Pizarro's request. *See* Docket 71, pg. 5.

request to suppress and ordered the parties to file post-hearing briefs. *See* Docket No. 58. Post-hearing briefs were subsequently filed. *See* Docket Nos. 69, 72. For the reasons discussed below, the Court **GRANTS** Mr. Pizarro's Motion to Suppress.

## I. FINDINGS OF FACT

During the evidentiary hearing, the Government presented the testimonies of Officer Ramón Pérez ("Officer Pérez") and Officer Onil Tejeda ("Officer Tejeda") of the Puerto Rico Police Department ("PRPD").

Officer Pérez testified that on December 30, 2022, he and Officer Tejeda were conducting a preventive patrol of Sector Villa Cañona in Loiza, Puerto Rico. Docket No. 71, pg. 9. While patrolling, the officers noticed a white Acura driving down Route 187 coming from the direction of the Loiza Police Station towards Canóvanas. *Id*. The officers saw the vehicle avoid a red light by entering the right turning lane, turning right, and then making what they describe was an illegal left U-turn to then take another right back onto the same original road, in violation of Puerto Rico Law 22, Article 6.16. *Id*. at 31-32. Due to this apparent violation, Officer Pérez told Officer

Tejeda they would intervene with the vehicle and proceeded to do so. *Id*.

Officer Pérez then exited the patrol car and approached the front passenger's side of the vehicle while Officer Tejeda approached the driver's side. *Id*. Officer Tejeda asked the driver, who was riding with two other passengers, to produce his driver's license and vehicle registration. *Id*. at 11. The driver indicated that he did not have a driver's license and handed over the vehicle registration. *Id*. Mr. Pizarro, who was sitting in the rear seat behind the front passenger, indicated that he had a driver's license. *Id.* at 13-14. Officer Tejeda instructed the driver and Mr. Pizarro to switch places so that Mr. Pizarro could drive. *Id*.

During the passenger swap, Mr. Pizarro left the rear right passenger side door open, and Officer Pérez noticed a strap laying on the floor tucked under the front passenger seat. *Id*. The officer asked the driver if that was a strap for a rifle, and the driver responded in the negative. *Id* at 15. The officer asked the driver to pull the strap. *Id*. The driver asked Mr. Pizarro if he could remove the handbag, and Mr. Pizarro granted him permission. *Id*. When the driver pulled the strap,

a handgun was on top of the handbag, and the officers immediately arrested all three individuals, including Mr. Pizarro. *Id*. at 40-41.

While preparing the inventory search document, known as the PPR-128 form, a search of the vehicle revealed a black handbag and a wallet with cartoon imprints. *Id*. at 25-29. The handbag contained 10 pistol magazines for .40 caliber ammunition, one round of .223 ammunition and one loaded Glock, Model 23, .40 caliber pistol with serial number BATH648. *Id*. Officer Pérez testified that Mr. Pizarro admitted to possessing all the items listed on the inventory search document after being displayed at the police station. *Id*. at 46-47. While another firearm was found underneath the front passenger seat located on the front side of said place, this second firearm was not listed in the inventory because Mr. Pizarro said it was not his. *Id*. None of the registered items were visible before the driver was asked to pull the bag. *Id*. at 45.

Officer Tejeda testified next for the Government. At the time of the relevant facts, Officer Tejeda was a PRPD officer and had held that position for 21 years. *Id*. at 51. Officer Tejeda

U.S.A. v. Pizarro-Quiñones                                                                                    Page 5

confirmed that on December 30, 2022, he and Officer Pérez were patrolling Sector Villa Cañona. *Id*. Officer Tejeda testified that he saw a vehicle down Route 187 run a red light by turning in a right turn lane subject to a traffic light. *Id*. at 53. After running through the red light and turning right, the vehicle made an illegal U-turn and joined the original road in Loiza towards Canóvanas. *Id*. Based on the traffic infraction committed in their presence, the officers conducted a traffic stop of the vehicle. *Id*.

Officer Tejeda also added that, after the driver and Mr. Pizarro switched seats, no words were spoken between the two. *Id*. at 63. Instead, Officer Tejeda started talking to Mr. Pizarro once he was in the driver's seat and heard Officer Pérez alert there was a firearm. *Id*. at 59. Officer Tejeda noted that, from his standpoint, he could not view the firearm nor how it was seized. *Id*. at 61. Nonetheless, the officer placed Mr. Pizarro under arrest and drove back to the police station in the same patrol car as the driver and Officer Pérez while the third passenger was placed in a different patrol car. *Id*. at 61-62.

U.S.A. v. Pizarro-Quiñones                                                                 Page 6

Mr. Pizarro declares in an Unsworn Statement[2] that, after he switched seats with the driver, the officers prevented them from closing the vehicle doors. Docket 45-1. He states that the officers removed his handbag from underneath the passenger seat without his permission. *Id*. Finally, he declares he made no statements to the officers at any point during the intervention. *Id*.

## II. ANALYSIS

The core question of the Court's analysis of whether suppression is warranted relies on the determination of reasonable suspicion to perform a traffic stop. However, because the Government argues that Mr. Pizarro lacks standing to bring forth his Fourth Amendment claims, the Court first addresses this threshold question before turning to the merits of Mr. Pizarro's Motion to Suppress. *U.S. v. Aguirre*, 839 F.2d 854, 856 (1st Circ. 1988); *see also Rakas v. Illinois*, 349 U.S. 128, 143 (1979).

---

[2] Mr. Pizarro did not testify at the evidentiary hearing. Instead, he provided an Unsworn Statement under penalty of perjury. *See* Docket 45-1.

### A. *Standing*[3]

In its Opposition to Defendant's Motion to Suppress and in its Post Suppression Hearing Brief, the Government argues that Mr. Pizarro fails to demonstrate he has a reasonable expectation of privacy in the vehicle and therefore lacks standing to challenge the constitutionality of the traffic stop and consequent firearm seizure.

A traffic stop and the temporary detainment of its occupants constitutes a seizure in Fourth Amendment terms. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Drivers and passengers alike are "seized" within the meaning of Fourth Amendment claims and may thus contest a traffic stop's constitutionality. *Brendlin v. California*, 551 U.S. 249, 258-259 (2007). Mr. Pizarro therefore has standing to seek suppression of the evidence obtained as the fruit of an unconstitutional seizure of his person due to the police officers' unlawful

---

[3] The Court notes that the Supreme Court has recognized that the assertion of Fourth Amendment rights "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Rakas v. Illinois*, 439 U.S. 128, 140 (1978). However, because the parties refer to the issue as one of "standing," for purposes of clarity, the Court also employs this nomenclature to refer to Mr. Pizzaro's privacy interests in the searched vehicle and seized firearm. *See U.S. v. Bain*, 874 F.3d 1, 13 (1st Cir. 2017).

traffic stop.

### B. *Fourth Amendment Claims*

A *Terry* stop is a specific type of Fourth Amendment seizure that allows an officer to briefly detain an individual to investigate possible criminal activity even though there is no probable cause to make an arrest. *United States v. Harrington*, 56 F.4th 195, 201 (1st Cir. 2022). This type of seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away[.]" *Terry v. Ohio*, 392 U.S. 1, 16 (1968). While Fourth Amendment safeguards apply to *Terry* stops, probable cause is not required. *Id*. Instead, a police officer must possess reasonable suspicion of criminal activity at the inception of the stop. *United States v. Howard*, 66 F.4th 33, 44 (1st Cir. 2023).

Here, the Government argues that the traffic stop satisfies constitutional requirements since the officers had reasonable suspicion to believe that a traffic violation had been committed in their presence. Docket No. 48, pg. 4. However, the Court notes that, during the evidentiary hearing, Officer Pérez and Officer Tejeda provided conflicting testimonies regarding the events leading to the traffic stop.

Officer Pérez claimed that he witnessed the vehicle in which Mr. Pizarro was a passenger make a right turn to avoid a red light. Docket No. 71, pg. 9. In contrast, Officer Tejeda asserted that the vehicle ran through a red light and then took a right turn. *Id*. at 53. These conflicting accounts undermine the credibility of both officers, particularly given that the right lane where the vehicle turned right is governed by a yield sign rather than a red light. *See* Docket No. 72-2.

Officer Pérez and Officer Tejeda's testimonies are inconsistent with each other and misrepresent the factual circumstances surrounding the detainment of the vehicle. The Court does note that both Officer Pérez and Officer Tejeda ultimately issued a ticket for an illegal U-turn and did not write up any infraction related to the right turn at the red light. Docket No. 71, pgs. 31-32, 53. While the discrepancies in their testimonies may be peripheral to the primary issue, they signal a lack of credibility which taints the totality of their accounts.

The Court now addresses whether Officer Pérez and Officer Tejeda had reasonable suspicion to stop the vehicle based on the illegal U-turn. Officer Pérez testified that this

maneuver is illegal under Puerto Rico Law 22, Article 6.16 as stated in the traffic ticket issued. *Id.* at 32; *also see* Docket No. 67-6. However, Article 6.16 states that U-turns are illegal if there is a sign specifically prohibiting such a turn, or if the turn occurs in a school zone or within 500 feet from a curve or hill obstructing the view of oncoming traffic.[4] P.R. Laws Ann. tit. 9, § 5166(e). None of these circumstances are present in the area where the vehicle made the U-turn. *See* Docket No. 72-1.[5]

The Court thus finds that the Officers had no reasonable suspicion to conduct a traffic stop. However, government officials are expected to act reasonably, not perfectly and are granted "fair leeway for enforcing the law." *Brinegar v. United States*, 338 U.S. 160, 176 (1949*); Heien v. North Carolina*, 574 U.S. 54, 61 (2014). An officer's suspicion may thus be grounded in a mistake of fact or law, if that mistake is "objectively reasonable." *Heien v. California*, 574 U.S. 54, 66

---

[4] The Court remarks that neither Officer Pérez nor Officer Tejeda indicated the subsection under Article 6.16 which provided reasonable suspicion to stop the vehicle. *See* Docket 71, pgs. 32, 53. However, none of the other prohibitions regarding turns listed under Article 6.16 are satisfied here.

[5] An image of the road where the U-turn occurred reveals a break in lines which allows U-turns. In turn, there is no visible sign prohibiting U-turns, and the area is not located in a school zone or within 500 feet from a curve or hill. *See* Docket 72-2.

(2014). While mistakes of law based on arduous questions of statutory interpretation may justify an officer's judgement, a poor study of the law cannot constitute a reasonable mistake. *Id*. at 55. "Thus, an officer can gain no Fourth Amendment advantage through a sloppy study of the law he is duty-bound to enforce." *Id*. at 67.

Here, the Court concludes that the officers' error of law was unreasonable. Both Officer Pérez and Officer Tejeda testified they decided to stop the vehicle based on a reasonable suspicion that it had made an illegal U-turn prohibited by Article 6.16. Docket 71, pgs. 9, 53. However, as the Court previously discussed, the circumstances under which the vehicle conducted a U-turn are not prohibited under this article. P.R. Laws Ann. tit. 9, § 5166(e). In addition, the article's clear language disallows the possibility to claim a reasonable misunderstanding of the scope of the law. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). These circumstances reveal the officers ignorantly believed that Article 6.16 prohibits drivers from conducting U-turns to avoid red lights. The officers' mistake of law thus cannot be held as a reasonable, good-faith mistake, but as the result of clear

ignorance of traffic law.[6]

While the circumstances under which U-turns are prohibited under Article 6.16 are not present in this case, neither is the specific maneuver which is illegal to avoid a red light. This article prohibits a vehicle from driving through a gas station or other activity conducted at a corner of an intersection to avoid a red light. P.R. Laws Ann. tit. 9, § 5166(g). However, neither Officer Pérez or Officer Tejeda claim that the vehicle was driven through a gas station or other activity conducted at a corner of an intersection. In fact, during Officer Pérez' cross examination, he testified that the officers did not even know whether the U-turn was made with the intent to avoid a red light. Docket 71, pg. 32. The Court thus concludes that none of the vehicle's maneuvers as described by the officers violated any of the provisions of Article 6.16.

---

[6] The officers' suspicion may had been held by this Court to be objectively reasonable if they had at least testified that the stop had been based on a mistake of fact. Nonetheless, the officers do not claim to have mistakenly believed the vehicle conducted a U-turn in a school zone or within two feet from a curve or hill obstructing the view of incoming traffic. *See* P.R. Laws Ann. tit. 9, § 5166(e).

The Court holds that the Government has failed to meet its burden of showing that the vehicle was lawfully stopped. The officers' mistake of law is not a result of a reasonable misinterpretation of an ambiguous statute but the result of a misunderstanding of clear legal traffic prohibitions. The Court therefore concludes the initial traffic stop was unconstitutional.

### C. *Exclusionary Rule*

Finally, the Government maintains that the seized firearm and ammunition are not subject to suppression because Mr. Pizarro, by granting permission to pull the handbag strap, revealed the handgun in plain view. Docket No. 69, pg. 7. However, the Court will not consider the merits of this claim since the Government has not shown that the seizure of the firearm was independent of the unlawful stop. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Evidence must be suppressed as fruit of the poisonous tree if, "granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality." *Id*. The record clearly shows that the strap which led the officer to suspect it was a rifle

strap only became visible after the police officers stopped the vehicle without reasonable suspicion. *See* Docket No. 69, pg. 15. The Court thus holds that the evidence would not have been obtained but for the traffic stop and thus moves to suppress the items seized as part of the illegal *Terry* stop.

### III. CONCLUSION

Having carefully examined the arguments raised by the parties, Mr. Pizarro's Motion to Suppress at Docket No. 45 is **GRANTED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 7th day of October 2024.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE